**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| TERESA BARTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-CV-00051 JAR |
| ) | |
| THE PROCTOR & GAMBLE COMPANY ) | |
| et. al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's motion to remand, (Doc. No. 54), Defendant D-W Tool, Inc.'s ("Wahlco") motion to dismiss for fraudulent joinder, (Doc. No. 29), and Defendant the Proctor & Gamble Company's ("P&G") motion to dismiss. (Doc. No. 42). The motions are fully briefed and ready for disposition. For the following reasons, the motion to remand will be granted. The motions to dismiss will be denied as moot.

**Background**

Plaintiff first filed her petition in the Circuit Court of Cape Girardeau County, Missouri on March 11, 2022, alleging that exposure to "absorbent gelling material" ("AGM") during her employment with P&G contributed to her developing hypersensitivity pneumonitis and to her being at an increased risk for the development of cancer. (Doc. No. 54 at 3). P&G timely removed the case to this Court on April 18, 2022. (Doc. No. 1). Shortly thereafter, on April 25, 2022, Wahlco filed a motion to dismiss for fraudulent joinder. (Doc. No. 29). P&G then filed a motion to dismiss on May 25, 2022. (Doc. No. 42). In lieu of a response to the motions to dismiss, Plaintiff filed her own motion to remand on June 23, 2022. (Doc. No. 53).

1

Wahlco's motion to dismiss included a declaration by Ron Wahlers, one of the co-founders and owner of Wahlco, which materially contradicted the claims Plaintiff made in her petition. (Doc. No. 29, Exh. 1).  Similarly, in its notice of removal, P&G included an affidavit from P&G Senior Purchasing Director Neil Gordon, which directly contradicted Plaintiff's claims regarding Wahlco's sale of materials to P&G.  (Doc. No. 1, Exh. B).  In order to support her motion for remand, Plaintiff filed a motion for expedited discovery, including leave to take the depositions of Mr. Wahlers and Mr. Gordon.  (Doc. No. 40).  The Court granted this motion in part, permitting Plaintiff to take these depositions only. (Doc. No. 66).  Plaintiff includes affidavits from former P&G employees Thomas Little, Mike Horman and Steve Bohnert to support her motion to remand. (Doc. No. 54, Exh. A, B, and C).  She also includes the deposition testimony of Mr. Wahlers and Mr. Gordon in her reply to Defendants' responses to her motion to remand.  (Doc. No. 86, Exh. D and H).[1]  Defendants Evonik Corporation ("Evonick"), BASF Corporation ("BASF"), and P&G filed separate responses to the motion to remand.  (Doc. No. 56, 59, 67).  Defendant Nippon Shokubai America Industries, Inc. ("Nippon") filed a memorandum in opposition to the motion to remand, as well as a motion to join Evonik's response to the motion.  (Doc. No. 68).

Plaintiff alleges that, from 2008 through 2019, she worked on the manufacturing line that produced diapers for P&G at its facility in Jackson, Missouri (the "Cape Girardeau plant").  (Doc. No. 54 at 3).  During that time, P&G designed and developed AGM, which it used in the production of its diapers at the Cape Girardeau plant.  *Id*.  Plaintiff was exposed to this material through her work from 2008 through 2019, and she alleges that the exposure to AGM caused or contributed to

---

[1] When considering a motion to remand, the Court may consider the pleadings and supporting affidavits, as well as the motion to remand and supporting affidavits. *See Perkins v. R.J. Reynolds Tobacco Co.*, No. 4:20-cv-1663-RW, 2021 WL 270461, at *3 (E.D. Mo. Jan. 27, 2021) (internal citations omitted).  In the case of fraudulent joinder, the Court may go further and consider "summary judgment-type evidence" such as affidavits and deposition testimony.  *Id*. (internal citations omitted).  The Court will therefore consider both the affidavits and deposition testimonies when considering the present motions to dismiss and motion to remand.

2

her developing hypersensitivity pneumonitis and to her being at an increased risk for the development of cancer.  *Id*.  Plaintiff brings four counts against all defendants in this case on the basis of these alleged injuries: (i) strict liability for a design defect; (ii) strict liability for the failure to warn; (iii) negligent design, manufacture, and testing; and (iv) negligent failure to warn.  *Id*.

Plaintiff alleges that Wahlco and P&G worked together to recycle AGM.  (Doc. No. 54 at 3).  P&G would deliver waste or rejected diapers to Wahlco, which would then separate the ingredients using a mechanical process.  *Id*.  This process also pulverized the AGM, so that Wahlco could return the material to P&G for further use in manufacturing diapers.  *Id*.  In his affidavit, Mr. Little testified that the company first started using AGM in the mid-1980s.  (Doc. No. 54, Exh. A).  P&G worked with Wahlco to reclaim AGM from rejected diapers. *Id.* Executives considered this a "success," as the process could allow P&G to re-use AGM the company had already paid for.  *Id*. at 2.  Mr. Little also explained that P&G began to reclaim AGM from rejected diapers while he worked with the company.  *Id*.  P&G employees would then send rejected diapers to Wahlco for recycling, and these diapers would then be shipped back to P&G.  *Id*.  Mr. Little left his position with P&G in 1998.

Mr. Horman testified that he worked with P&G from 1985 through 2018.  (Doc. No. 54, Exh. B).  Mr. Horman stated that P&G would send rejected diapers to Wahlco, who would then separate the ingredients in the diapers and return them to P&G.  *Id*. According to Mr. Horman, this practice occurred throughout his tenure with P&G.  *Id*. at 2.  Similarly, former Wahlco employee Steve Bohnert testified via affidavit that Wahlco received rejected diapers from P&G, separated the materials in the diapers, including AGM, and returned the AGM back to the Cape Girardeau plant.  (Doc. No. 54, Exh. C).

3

In response to the motion to remand and in support of finding that Plaintiff joined Wahlco fraudulently, Defendants raise two primary arguments: (i) Mr. Wahler's and Mr. Gordon's affidavits demonstrate conclusively that Wahlco could not have contributed to or caused Plaintiff's injuries, as it did not recycle or sell AGM to the Cape Girardeau plant; and (ii) in the alternative, the Court must dismiss Wahlco pursuant to Mo. Rev. Stat. § 537.762 (Missouri's "Innocent Seller" statute), as any liability against Wahlco is premised on its status as a seller in the stream of commerce.

**Legal Standards**

A defendant may remove a state law claim to federal court only if the action originally could have been filed there. *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (citing *Phipps v. FDIC,* 417 F.3d 1006, 1010 (8th Cir. 2005)). The removing defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Altimore v. Mount Mercy College,* 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *Prempro,* 591 F.3d at 620 (citing *Wilkinson v. Shackelford,* 478 F.3d 957, 963 (8th Cir. 2007)). A case must be remanded if, at anytime, it appears that the district court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

Removal in this case was premised on diversity jurisdiction, pursuant to 28 U.S.C. § 1332, which requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 346 (8th Cir. 2007). The district court's "determination of citizenship for the purpose of diversity is a mixed question of law and fact, but

4

mainly fact." *Altimore,* 420 F.3d at 768 (citation omitted). The existence of diversity of citizenship is determined at the time the suit is instituted, and not when the cause of action arose. *Smith v. Snerling,* 354 U.S. 91, 93 n. 1 (1957).

A plaintiff cannot defeat removal through the collusive or fraudulent joinder of a resident defendant. *See Mallette v. Mercedes-Benz USA, LLC*, No. 4:20-CV-00294 JAR, 2020 WL 3639636, at *1 (E.D. Mo. Jul. 6, 2020) (citing *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). When a party seeking removal alleges fraudulent joinder, that party bears the burden of proving the alleged fraud. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). The Eighth Circuit describes the fraudulent joinder standard as one of reason. *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003). Therefore, if it is clear under governing state law that the complaint does not state a cause of action against the nondiverse defendant, then the joinder is fraudulent and federal jurisdiction over the case should be retained. *See Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406n.6 (8th Cir. 1977); *see also Protégé Biomedical, LLC v. Duff & Phelps Securities, LLC,* No. 21-1368, 2022 WL 1008281, at *1 (8th Cir. Apr. 4, 2022) (per curiam) (citing *Wivell v. Wells Fargo Bank*, *N.A.*, 773 f.3D 887, 893 (8th Cir. 2014) (stating that fraudulent joinder occurs when there is no reasonable basis in fact and law for the claims brought against the non-diverse defendant). However, if there is a "colorable" cause of action, "that is, if the state law *might* impose liability on the resident defendant under the facts alleged," then there is no fraudulent joinder. *Filla*, 336 F.3d at 810 (emphasis in the original).

**Discussion**

Under Missouri state law, a plaintiff alleging strict liability for physical harm caused by an unreasonably dangerous or defective product must demonstrate: (i) a defendant's duty to protect the plaintiff from injury, (ii) the defendant's failure to perform that duty, and (iii) that plaintiff

5

sustained an injury because of that failure. *See Thompson v. Brown & Williams Tobacco Corp.*, 207 S.W.3d 76, 79 (Mo. App. W.D. 2006). Defendants allege that Wahlco is fraudulently joined because Plaintiff is unable to establish either that Wahlco had a duty to protect her, or that Wahlco contributed to her injury by failing to perform that duty. Specifically, Wahlco notes that Mr. Wahler's and Mr. Gordon's affidavits establish that Wahlco did not sell AGM to P&G. (Doc. No. 30 at 5). In response, Plaintiff points out that Mr. Little, Mr. Horman, and Mr. Bohnert all testified that Wahlco recycled AGM by separating the components of the diapers and pulverizing it. Mr. Little, Mr. Horman, and Mr. Bohnert further testified that Wahlco would then ship the AGM back to P&G for further use. (Doc. No. 54 at 6).

Although the Eighth Circuit has not addressed the issue directly, federal courts in Missouri will "pierce the pleadings" on a motion for remand to consider not only the pleadings, but also supporting affidavits, the motion for remand, and affidavits supporting the motion for remand. *Baum v. R.J. Reynolds Tobacco Company*, Case No. 4:20-cv-01557-AGF, 2020 WL 7695403, at *4 (E.D. Mo. Dec. 28, 2020) (quoting *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994). However, the Court may not use these materials to weigh the evidence or determine witness credibility. *See Perkins*, 2021 WL 270461, at *3. "If the question of fraudulent joinder depends on witness credibility and the weight of the evidence, there is no fraudulent joinder." *In re Genetically Modified Rice Litig.*, 618 F.Supp.2d 1047, 1052 (E.D. Mo. 2009).

The Court must resolve the discrepancies in the competing declarations of Mr. Whaler and Mr. Gordon on one side, and Mr. Little, Mr. Horman, and Mr. Bohnert on the other, in favor of remand. Plaintiff provides testimony from witnesses who specifically and directly contradict the testimony Mr. Wahler and Mr. Gordon provided. *Cf. Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2015 WL 1474080, at *3 (W.D. Mo. Mar. 31, 2015) (finding fraudulent joinder where the

petition contained only conclusory allegations and the defendants provided affidavits disclaiming their involvement).  For instance, Mr. Horman states that Wahlco developed a process to recycle AGM. Mr. Bohnert likewise explains that Wahlco sent recycled AGM to P&G in 2018.  Though Mr. Little does not testify as to whether P&G worked with Wahlco while Plaintiff worked for P&G, he directly contradicts Mr. Wahler's and Mr. Gordon's assertions that P&G never worked with Wahlco to recycle AGM; he even notes that P&G considered the process a notable "success." As Plaintiff has provided specific facts regarding the subject matter of her complaint via affidavit, the Court must avoid weighing the competing evidence and accept the affidavits she provided, at a minimum, raising questions of fact for the purposes of remand.  On the basis of these affidavits, the Court holds there is evidence to support a finding that Wahlco contributed to Plaintiff's injury by recycling AGM and returning it to the Cape Girardeau plant; as Plaintiff alleges, the exposure to this chemical then contributed to her ailments. Thus, Wahlco is not fraudulently joined, and its Missouri citizenship defeats diversity in this case.

Defendants next contend that Wahlco is fraudulently joined because the Missouri Innocent Seller Statute prohibits a case against a defendant seller for whom liability is premised solely on the defendant's status as a seller of the product at issue in the stream of commerce. *See* (Doc. No. 56 at 3).  This statute requires a court to dismiss such a defendant "as long as another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Mo. Rev. Stat. § 537.762 (1),(2).[2]  Prior to 2019, the right to dismissal under the Innocent Seller Statute was considered an affirmative defense.  *See Coplin*, 2012 WL 1596887,

---

[2]   The Innocent Seller Statute contains both substantive and procedural portions.  *See Coplin v. Mr. Heater, Inc.*, No. 4:12CV363 JAR, 2012 WL 1596887, at *3 (E.D. Mo. May 7, 2012).  Federal district courts must apply the substantive portions of the statute in cases in which they exercise diversity jurisdiction; the substantive portions are those requiring the court to dismiss defendants which qualify as "innocent sellers" under the statute.  *See Thomas v. Brown and Williamson Tobacco Corp.*, No. 06-0223-CV-W-SOW, 2006 WL 1194873, at *3 (W.D. Mo. Apr. 28, 2006); *Spears v. Bayer Corp.*, No. 03-1151-CV-W-GAF, 2004 WL 7081904, at *3 (W.D. Mo. Mar. 29, 2004)(internal citations omitted).

7

at *3. Procedurally, a plaintiff could bring a case against an "innocent seller," that seller could then raise a defense under the statute, and the Court would then dismiss the seller from the case if the statutory prerequisites were met. *Id*. The statute was therefore not a sufficient basis for "determining that diversity jurisdiction did not exist at the time of filing based upon the purported fraudulent joinder of a retailer." *Id*. (citing *Fahy v. Taser Int'l Inc.*, No. 4:10CV19 CDP, 2010 WL 559249, at *2 (E.D. Mo. Feb. 10, 2010) (superseded by statute, *Anderson v. R.J. Tobacco Co.*, 549 F.Supp.3d 979, 984n.1 (E.D. Mo. 2021)). However, in 2019, the Missouri legislature removed the statutory language requiring an innocent seller to raise the statute as an affirmative defense. *Anderson*, 549 F.Supp. 3d at 984 n.1. Though courts recognize that an innocent seller may be reinstated later in the case if there is no other defendant from whom the plaintiff can recover, the defendant may use the statute as a basis for urging a court to find that it was fraudulently joined when there is no reasonable basis that the defendant can be reinstated. *Id*. at 984.

Inherent in the Innocent Seller Statute "is a substantive public policy choice of significant importance." *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 445-446 (Mo. banc 2002). The statute's purpose is thus to balance the protection of non-manufacturers who did not directly contribute to the unreasonable danger of the product in question with the innocent consumer's right to recover for their injuries. *See Malone v. Schapun, Inc.*, 965 S.W.2d 177, 181 (Mo. Ct. App. E.D. 1997) (citing 44 Fed. Reg. 62714 (1979)). Therefore, courts have identified several scenarios in which the Innocent Seller Statute is inapplicable. First, though the seller has no duty to inspect or test the product at issue, *see Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo. App. E.D. 1987), if the seller knows or has reason to know that the chattel is dangerous for the use for which it is supplied, the statute will not protect that seller from liability. *See Griffin v. Kandi Technologies Corp.*, 454 S.W.3d 341, 347 (Mo. App. S.D. 2014). Second, if liability

against the seller is predicated on some action the seller took, rather than that seller's mere existence in the stream of commerce, the statute does not apply.  *See Davis v. Dunham Athleisure, Corp.*, 362 F.Supp.3d 651, 658 (E. D. Mo. 2019); *see also, Spears*, 2004 WL 7081940, at *3 (noting that the defendant raising the statute as a defense must demonstrate that "potential liability is based *entirely* on [its] status as a seller") (emphasis in original).  Finally, the Missouri legislature intended the statute to dismiss the seller at an early stage of the litigation, saving the seller from the costs of discovery and eliminating the need for future indemnification from the manufacturer. *See Dorsey v. Sekisui American Corp.*, 79 F.Supp. 2d 1089, 1091 (E.D. Mo. 1999).  Thus, the statute does not protect sellers against whom a plaintiff has also raised independent negligence claims.  *See McMahon v. Robert Bosch Tool Corp.*, No. 4:18-CV-583 CAS, 2018 WL 3036455, at *3 (E.D. Mo. Jun. 19, 2018).

   As an initial matter, the Innocent Seller Statute is not applicable to Wahlco because Plaintiff specifically alleges negligent acts Wahlco performed in her claims for negligence.  *See* (Doc. No. 12).  Inherent to a claim for negligence is the allegation that the defendant took or failed to take some action against the applicable standard of reasonable care. This negates any argument that the negligence claims against Wahlco are premised solely on its status as a seller in the stream of commerce, as Wahlco allegedly took actions other than merely selling its product.  Furthermore, even if Plaintiff had not raised negligence claims against Wahlco, the Innocent Seller Statute does not apply in this case.  Plaintiff's claims against Wahlco are predicated on Wahlco's development of a process to "pulverize" and separate the AGM it received from P&G.  Plaintiff does not allege that Wahlco merely sold AGM to P&G, but rather, that Wahlco recycled the product, and in so doing, took affirmative steps which made the product more dangerous to Plaintiff. (Doc. No. 12 at 14-15). As the Innocent Seller Statute does not appear to apply to Wahlco in this case, it is not a

9

basis on which the Court can find that Plaintiff fraudulently joined Wahlco. As Wahlco is not fraudulently joined, the parties have failed to establish the requisite diversity of citizenship, and the Court lacks the subject matter jurisdiction to hear this case.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (Doc. No. 53) is **GRANTED**. Wahlco's motion to dismiss, (Doc. No. 29), is **DENIED**. This case will be **REMANDED** to the Circuit Court of Cape Girardeau County, State of Missouri.

**IT IS FURTHER ORDERED** that P&G's motion to dismiss, (Doc. No. 42), is **DENIED** without prejudice as moot.[3]

A separate Order of Remand accompanies this Memorandum and Order.

Dated this 28th day of March, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

---

[3] *See LaBarge Realty, LLC v. SanD Development, LLC*, No. 4:18-CV-1904 JAR, 2019 WL 205788, at *2 (E.D. Mo. May 9, 2019) (noting that the Court lacked subject matter jurisdiction to determine the motion to dismiss after remanding the case).